**Trinity BUI et al., Plaintiffs,**

v.

**INDUSTRIAL ENTERPRISES OF AMERICA, INC. et al., Defendants.**

**No. 08 Civ. 0583(VM).**

United States District Court, S.D. New York.

Jan. 15, 2009.

---

**117.** *FLSA Minimum Wage Poster, supra.*

Leon Baer Borstein, Borstein & Sheinbaum, Michael Colin Barrows, Barrows & Associated PLLC, Blau, Kayman & Barrows, New York, NY, for Plaintiffs.

William Donald McCracken, Ganfer & Shore, LLP, Sheryl Beth Galler, Hoguet, Newman and Regal, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Trinity Bui and Trinity Financing Investments Corporation ("Plaintiffs") brought this action alleging violations of § 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)"), 15 U.S.C. § 78a et seq. (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b–5 promulgated thereunder ("Rule 10b–5"), 17 C.F.R. § 240.10b–5; § 20(a) of the Exchange Act ("§ 20(a)"); and common law fraud. The amended complaint ("Amended Complaint"), filed on October 31, 2008, names as defendants Industrial Enterprises of America, Inc. ("IEAM") and Beckstead and Watts, LLP ("Beckstead"), IEAM's accountants. It also names as individual defendants John Mazzuto ("Mazzuto"), James Margulies ("Margulies"), Dennis O'Neill ("O'Neill"), and Jorge Yepes ("Yepes") (collectively, "the Individual Defendants").[1] IEAM, Margulies, and O'Neill moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b) (6) ("Rule 12(b)(6)") and 9(b) ("Rule 9(b)"). Mazzuto subsequently sought and was granted leave to join this motion. The motion by IEAM, Margulies, O'Neill, and Mazzuto (collectively, "the IEAM Defendants") asserts that the Amended Complaint fails to state a claim upon which relief may be granted, and fails to plead fraud with sufficient particularity.

For the reasons stated below, the Court GRANTS the motion to dismiss in its entirety.

---

1. IEAM, Beckstead, Mazzuto, Margulies, O'Neill, and Yepes will be referred to collec-

## I. *BACKGROUND*[2]

### A. *FACTUAL ALLEGATIONS*

In 2004 and 2005, Plaintiffs made a series of loans to IEAM, consisting of: four convertible notes of $25,000 each, totaling $100,000 ("$100K Notes"); four convertible notes of $100,000, $50,000, $50,000, and $300,000, totaling $500,000 ("$500K Notes"); a $200,000 promissory note ("$200K Note"); and a $350,000 promissory note ("$350K Note"). Plaintiffs received payment for the $200K Note before the end of 2005.

To take advantage of IEAM's rising stock price, Plaintiffs asked to exercise their right to convert the $100K and $500K Notes into shares of IEAM stock. Plaintiffs also demanded payment of the balance of the $350K Note. IEAM and the Individual Defendants refused, and Plaintiffs sued IEAM and Mazzuto in state court, seeking, in part, to convert the Notes into stock. Settlement negotiations commenced in October 2007, when IEAM stock was trading at approximately $4.25 per share. The stock price then dropped to $3.55 per share. On or about November 2, 2007, the price had dropped to $2.97 per share.

Plaintiffs decided to enter into a settlement agreement in which the parties would discontinue or dismiss all claims against each other, with prejudice, and Plaintiffs would receive a payment of $500,000, plus 870,000 shares of IEAM common stock. The agreement was executed on November 2, 2007, and the value of the 870,000 shares on that date, at the price of $2.97 per share, was $2,583,900.

The closing for the settlement agreement took place on November 6, 2007.

On November 7, 2007, IEAM provided an accounting update, announcing that: (1) an IEAM supplier would need to be accounted for as a Variable Interest Entity because IEAM was its sole customer; (2) the IEAM reserve for current litigation should be increased by $9.5 million, to $13.5 million; and (3) IEAM had failed to follow Generally Accepted Accounting Principles ("GAAP") revenue recognition procedures, and would thus cancel bill and hold transactions for the quarter ending December 31, 2006, the quarter ended March 31, 2007, and the fourth quarter of fiscal year 2006–2007 (presumably, the quarter ended June 30, 2007). The cancelled bill and hold transactions would result in $8 million in liabilities on the books for the fiscal year ended June 30, 2007. IEAM also announced later that day that Yepes, the Chief Financial Officer, was being suspended in connection with an internal integrity review.

After these announcements were made, the price of IEAM stock dropped to approximately $0.66 per share. When Plaintiffs sold their 870,000 shares of IEAM stock, they received $586,605, which represents a share price of $0.67.

Plaintiffs then filed the instant action on January 23, 2008. The Amended Complaint alleges that, at all relevant times, the Individual Defendants held the offices indicated below at IEAM:

Mazzuto: Chairman, Director, Secretary, and Chief Executive Officer from August 2004 through December 31, 2007;

---

tively as "Defendants."

**2.** In ruling on the IEAM Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the following facts, which are derived from the allegations contained in the Plaintiffs' Amended Complaint filed October

31, 2008, and the documents cited or relied upon for the facts pled therein. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). Except where specifically quoted, no further reference to these documents will be made.

Chief Financial Officer from December 2006 to March 19, 2007, and from May 2007 to September 2007.

Margulies: Chief Financial Officer from December 2005 to December 2006.

O'Neill: Chief Financial Officer from March 19, 2007 to May 2007.

Yepes: Chief Financial Officer from September 4, 2007.

The Amended Complaint alleges that IEAM, Beckstead, and the Individual Defendants violated § 10(b) and Rule 10b–5 when they carried out a plan, scheme, and course of conduct which was intended to and did deceive Plaintiffs and induce them to enter into the settlement agreement in which they accepted 870,000 shares of IEAM stock at "artificially inflated prices." (Amended Complaint ¶ 43.) Plaintiffs allege that each Individual Defendant was "privy to and participated in the creation, development and reporting of [IEAM]'s financial condition;" "enjoyed significant personal contact and familiarity with the other [Individual Defendants] and was advised of and had access to other members of [IEAM]'s management team, internal reports and other data and information about [IEAM]'s finances, operations, and sales;" and "was aware of [IEAM]'s dissemination to [Plaintiffs] of information that they knew or recklessly disregarded to be materially false." (Amended Complaint ¶ 59.)

Plaintiffs also allege that Individual Defendants, as control persons with direct and supervisory involvement in IEAM operations, violated § 20(a) of the Exchange Act. Finally, Plaintiffs allege common law fraud under New York law.

Plaintiffs claim that Defendants' actions artificially inflated IEAM's stock price and caused Plaintiffs to incur $500,000 in legal fees (presumably when Plaintiffs decided to exercise their right to convert the Notes into stock), and they seek this amount as part of their damages claim. Plaintiffs also contend that but for Defendants' fraudulent actions, they would have accepted an offer from Defendants of $500,000 in cash, instead of opting to convert the Notes into stock; Plaintiffs therefore ask for interest on $500,000 from March 2006 to November 2007. Plaintiffs ask for damages to be determined at trial, but they state that such damages are not less than $2,000,000, plus interest.

## B. *PROCEDURAL HISTORY*

Plaintiffs served their initial complaint (the "Initial Complaint") on IEAM and Beckstead on February 11 and 12, 2008. When no responsive pleading was filed by those defendants within the required time, Plaintiffs filed a motion for default judgment as to those defendants. The Court granted that motion on April 10, 2008. Counsel for IEAM subsequently appeared, and IEAM moved to vacate the default judgment against it, arguing that default was not willful, that vacatur would not unduly prejudice Plaintiffs, and that IEAM had meritorious defenses to the action. The Court granted this motion on May 2, 2008. The Court also granted IEAM, Margulies, and O'Neill an extension of time to file an answer. These defendants filed the instant motion to dismiss on May 9, 2008.

Plaintiffs served the Initial Complaint on Mazzuto on April 9, 2008. When Mazzuto did not file a responsive pleading within the required time, Plaintiffs moved for default judgment against Mazzuto. The Court granted this motion on July 21, 2008. Counsel for Mazzuto subsequently appeared, and moved to vacate the default judgment, arguing that the default was not willful, and that vacatur would not prejudice the Plaintiffs. The Court granted the motion to vacate on November 3, 2008.

At a conference held on October 31, 2008, the Court granted Plaintiffs leave to amend the Initial Complaint, and Plaintiffs submitted the Amended Complaint at that conference. By a letter dated November 7, 2008, IEAM, Margulies, and O'Neill advised the Court of their arguments as to why the Amended Complaint is "substantially similar" to the Initial Complaint and "remedies none of the defects identified by [the IEAM defendants] in [their] submissions on the pending motion to dismiss" filed in response to the Initial Complaint. (Letter to the Court from Thomas J. Curran, dated November 7, 2008.) The Court accepted this letter as a motion to dismiss the Amended Complaint. In a letter dated November 10, 2008, Mazzuto requested leave to join the pending motion to dismiss the Initial Complaint and Amended Complaint filed by IEAM, Margulies, and O'Neill. The Court granted that request.

The Court has compared the Initial Complaint and the Amended Complaint, and finds that the Amended Complaint is substantially similar to the Initial Complaint. In considering whether to dismiss the Amended Complaint, the Court will thus consider the memoranda associated with the motion to dismiss filed in response to the Initial Complaint, as well as the November 7, 2008 letter from IEAM defendants; the November 10, 2008 letter from Mazzuto; the opposition by Plaintiffs to the motion to dismiss the Amended Complaint, in the form of a five-page letter dated January 1, 2009; and the letter from IEAM, Margulies, and O'Neill, dated January 5, 2009.

## II. *LEGAL STANDARD*

### A. *STANDARD OF REVIEW*

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of the complaint is appropriate if the plaintiff has failed to offer any factual allegations making his or her claim plausible. *See Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers*, 282 F.3d at 152.

### B. *SECTION 10(b) AND RULE 10b–5 PLEADING STANDARDS*

To adequately state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must assert facts showing that "the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001) (*quoting San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996)). In an action under § 10(b) and Rule 10b–5, plaintiffs must allege a state of mind evidencing " 'an intent to deceive, manipulate or defraud.' " *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir.2000) (*quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

Securities fraud actions are also subject to the heightened pleading requirements of the Private Securities Litigation Reform

Act of 1995 ("PSLRA"), Pub. L. No. 104–67, 109 Stat. 737, as well as those of Rule 9(b). *See Kalnit,* 264 F.3d at 138; *see also Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000).

### 1. *False or Misleading Statement or Omission*

To satisfy the pleading standards of Rule 9(b), such allegations of fraud must be pled with particularity. Specifically, the complaint must: (1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent. *See Novak,* 216 F.3d at 306. The PSLRA imposes similar heightened pleading standards when a plaintiff alleges a material misrepresentation or omission. *See Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004).

### 2. *Scienter*

■■■ Pursuant to the PSLRA, a plaintiff can allege sufficient facts to support a "strong inference" of state of mind by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007). Motive and opportunity can be established by demonstrating that defendants benefitted "in a concrete and personal way" from the alleged fraud. *Novak,* 216 F.3d at 311. Sufficient evidence of recklessness exists if the factual allegations demonstrate that defendants (1) possessed knowledge of facts or access to information contradicting their public statements, or (2) "failed to review or check information that they had a duty to monitor, or ignored obvious signs of

fraud." *Id.* at 308 (internal citations omitted).

To summarize, the Second Circuit recently referred approvingly to *Novak*'s description of Second Circuit case law as suggesting that the required strong inference may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.,* 531 F.3d 190, 194 (2d Cir.2008) (internal quotation marks omitted).

■■■ In addition, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2510, 168 L.Ed.2d 179 (2007). A strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2504–05.

### 3. *Causation*

■■■ Lastly, to adequately state a claim for securities fraud, a plaintiff must plead both transaction and loss causation. *See ATSI Commc'ns,* 493 F.3d at 107. Transaction causation is similar to reliance and requires a showing indicating that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir.2005) (internal quotation marks and citation omitted).

Loss causation requires a link between the alleged misconduct and the ultimate economic harm suffered by the plaintiff, and a plaintiff must claim that "the loss be foreseeable and that the loss be caused by the materialization of the concealed risk." *Id.* at 173 (emphasis in original).

## C. *SECTION 20(A) LIABILITY*

Liability for violations of § 20(a) is derivative of liability for violations of § 10(b). *See Sec. & Exch. Comm'n v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir. 1996) *(hereinafter "First Jersey ").* Section 20(a) imposes liability upon "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. To establish a prima facie case, a plaintiff must show "a primary violation by the controlled person and control of the primary violator by the targeted defendant ... and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrate." *Id.*

## D. *COMMON LAW FRAUD*

■ The elements of common law fraud under New York law are: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." *Dover Ltd. v. A.B. Watley, Inc.,* 423 F.Supp.2d 303, 327 (S.D.N.Y.2006) (citations omitted).

Claims of common law fraud must satisfy the requirements of Rule 9(b). *See Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 274 (S.D.N.Y.2006) ("Rule 9(b) extends to all averments of fraud or mistake" *(quoting Frota v. Prudential–Bache Secs., Inc.,* 639 F.Supp. 1186, 1193 (S.D.N.Y.1986))). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Thus, conclusory allegations of fraud may be dismissed under Rule 9(b). *See Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971).

## III. *DISCUSSION*

## A. *SECTION 10(B) AND RULE 10B–5 CLAIMS*

### 1. *No Alleged Misrepresentations or Omissions Identified*

■ The Amended Complaint is replete with general allegations and phrases that mimic the statutory language defining the violations alleged. There are numerous references to "false, misleading, and incomplete information" (Amended Complaint ¶ 47), and to "materially false and misleading" misstatements, omissions, and adverse facts. (Amended Complaint ¶ 49, 50, 52, 53, 54, 56).

However, the Amended Complaint does not satisfy the heightened pleading standards of Rule 9(b) because it does not provide any of the required information. Rule 9(b) requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak,* 216 F.3d at 306. The Amended Complaint does not present any specific statements as fraudulent. Beyond the generalizations noted above, the closest that the Amended Complaint comes to specifying fraudulent statements are references to "Defendants' overstatements and misstatements of the Company's financial

condition" (Amended Complaint ¶ 61), and "statements made about IEAM and its business operations and future prospects" (Amended Complaint ¶ 58). Plaintiffs do not, however, identify any specific over-statements, misstatements, or statements.

The Amended Complaint also alleges that the Individual Defendants were responsible for "the content of the various SEC filings, press releases and other public statements pertaining to [IEAM]" (Amended Complaint ¶ 51), and that "false, misleading, and incomplete information" was conveyed in IEAM's "public filings, press releases, and other publications" (Amended Complaint ¶ 47), but Plaintiffs do not specify any statements within these various filings or announcements, and they also do not allege that any particular statements were fraudulent. The only statements that are specifically quoted are from the November 7, 2007 announcement from IEAM regarding the accounting update and the litigation reserve, and Plaintiffs do not allege that any statements in that announcement are fraudulent. Plaintiffs seem to suggest that SEC filings, press releases, and other public statements by IEAM were fraudulent because they concealed some sort of accounting fraud, but Plaintiffs have absolutely failed to identify any specific statements or allege with the required particularity that statements were false or misleading.

### 2. *No Inference of Scienter*

■ Not only have plaintiffs failed to identify which statements they allege are fraudulent, they have also failed to establish a "strong inference" of scienter. The Amended Complaint lacks any allegations that Defendants had a motive or opportunity to commit fraud. Plaintiffs do allege that Defendants acted "so as to effectuate a stock settlement with Plaintiffs at an artificially-inflated value of the stock, after

they became aware of the fraud but prior to the announcement of the fraud" (Amended Complaint ¶ 57), but this allegation does not constitute an assertion of concrete and individual gain to each defendant resulting from the fraud. *See Novak,* 216 F.3d at 311.

Nor are there any factual allegations supporting a finding of conscious misbehavior or recklessness. *See ATSI Commc'ns,* 493 F.3d at 99. There are no allegations of deliberately illegal behavior, beyond the numerous phrases in the Amended Complaint that simply repeat the statutory descriptions of securities fraud offenses. There are also no sufficient allegations of recklessness: there can be no finding that the Defendants "knew facts or had access to information suggesting that their public statements were not accurate," *Novak,* 216 F.3d at 308, because Plaintiffs have not identified a single supposedly inaccurate public statement. Plaintiffs have also failed to demonstrate that Defendants neglected to "check information they had a duty to monitor," *id.* at 308, as Plaintiffs have failed to "specifically identif[y] any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements." *Teamsters Local,* 531 F.3d at 196.

Because Plaintiffs have not pled their claims with the requisite particularity or established a strong inference of scienter, the motion to dismiss the § 10(b) and Rule 10b–5 claims is granted.

### B. *SECTION 20(a) CLAIM*

To the extent that Plaintiffs have failed to sufficiently allege predicate violations of § 10(b), the control person claims under § 20(a) of the Exchange Act also fail. *See First Jersey,* 101 F.3d at 1472; *Elliott Assocs., L.P. v. Hayes,* 141 F.Supp.2d 344,

360–361 (S.D.N.Y.2000). The IEAM Defendants' motion to dismiss this claim is granted.

## C. COMMON LAW FRAUD CLAIM

For the same reasons that Plaintiffs' § 10(b) and Rule 10b–5 claims have failed, their common law fraud claims also fail. *See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F.Supp.2d 385, 407 (S.D.N.Y.2005) ("The elements of common law fraud thus are largely the same as those of a Rule 10b–5 claim except that there is no requirement that the fraud be 'in connection with the purchase or sale of securities.' "). Plaintiffs have not pled any of the elements of common law fraud with the requisite particularity; Plaintiffs' failure or refusal to specify any particular statement as allegedly fraudulent means that Plaintiffs are unable to allege that there has been "a material representation or omission of fact." *See Dover Ltd.*, 423 F.Supp.2d at 327. Nor have Plaintiffs adequately alleged knowledge, scienter, or reliance. *See id.* The motion to dismiss the fraud claim is therefore granted.

## D. NO LEAVE TO REPLEAD

The IEAM Defendants request that the Plaintiffs' claims be dismissed with prejudice. Federal Rule of Civil Procedure 15(a) ("Rule 15") states, "The court should freely give leave [to amend a pleading] when justice so requires." However, "[t]he decision to grant leave to amend is within the sound discretion of the trial court." *Bay Harbour Mgmt. LLC v. Carothers*, 474 F.Supp.2d 501, 502 (S.D.N.Y. 2007) (citation omitted). A complaint may be dismissed with prejudice "where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir.1988); *see also Massey v. Fischer*, No. 02 Civ. 10281, 2004 WL 1908220, at *5 (S.D.N.Y. Aug. 26, 2004) (finding leave to amend to be futile and dismissing claims with prejudice when the court had directed plaintiff "to include requisite facts to support his claims" and plaintiff failed to present such facts); *Saunders v. Coughlin*, No. 92 Civ. 4289, 1995 WL 144107, at *6 (S.D.N.Y. Mar. 30, 1995) (dismissing the complaint with prejudice when the amended complaint failed to cure the deficiencies noted in the original complaint, and finding that granting leave to amend would be futile).

Plaintiffs have already had an opportunity to amend the Initial Complaint in response to the deficiencies pointed out by the first pre-answer motion to dismiss, which argued that Plaintiffs's Initial Complaint did not identify any specific statements as allegedly fraudulent. As described above, the Amended Complaint also fails to identify any allegedly fraudulent statements. This jurisdiction's case law outlining the elements of an adequately pled securities fraud claim as required by the PSLRA is very well-developed. After the first pre-answer motion to dismiss was filed, Plaintiffs had nearly six months before they submitted their Amended Complaint to identify the allegedly fraudulent statements that would form the basis of their securities fraud claims. Based on Plaintiffs' inability to specify even a single allegedly fraudulent statement after being given ample opportunity to do so, the Court will not grant Plaintiffs leave to replead. The motion to dismiss is granted with prejudice.

## E. NO REMAINING DEFENDANTS

The Court notes that upon dismissal of the Amended Complaint with respect to the IEAM Defendants, no defendants will remain in this action. Plaintiffs have not resumed their attempt to enforce the default judgment against Beckstead since the

IEAM Defendants appeared in the case, and Plaintiffs never served Yepes with the Initial Complaint. The Initial Complaint was filed on January 23, 2008, and the 120–day period for service under Fed. R.Civ.P. 4(m) ("Rule 4(m)") expired in May of 2008. Plaintiffs have not shown good cause for their failure to serve Yepes, and under Rule 4(m) the Court must dismiss the action against Yepes without prejudice.

## IV.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 32) of defendants Industrial Enterprises of America, Inc., James Margulies, and Dennis O'Neill, as joined by defendant John Mazzuto (Docket No. 31), to dismiss the amended complaint of plaintiffs Trinity Bui and Trinity Financing Investments Corporation ("Plaintiffs") with prejudice is GRANTED; and it is further

**ORDERED** that the amended complaint as against defendant Beckstead and Watts, LLP ("Beckstead") is DISMISSED without prejudice, subject to a re-opening of the case against Beckstead upon the filing of any action that the Plaintiffs may bring to enforce the default judgment; and it is further

**ORDERED** that the amended complaint as against defendant Jorge Yepes is DISMISSED without prejudice.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**