**SAPIRSTEIN–STONE–WEISS FOUNDATION and Irving I. Stone Foundation, Plaintiffs,**

v.

**J. Ezra MERKIN and Gabriel Capital Corporation, Defendants.**

**No. 13 Civ. 415 (VM).**

United States District Court, S.D. New York.

June 11, 2013.

Order Denying Reconsideration July 11, 2013.

---

David Edgar Bamberger, Brickman & Bamberger, New York, NY, for Plaintiffs.

Neil A. Steiner, Kristina Arlene Moon, Dechert, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Sapirstein–Stone–Weiss Foundation ("SSWF") and Irving I. Stone Foundation ("IISF," and collectively with SSWF the "Plaintiffs") filed the complaint in this action against Defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC," and collectively with Merkin the "Defendants") alleging a variety of claims under New York common law including Breach of Fiduciary Duty, Fraud, Negligent Misrepresentation, Breach of Contract, Breach of Implied Obligation of Good Faith and Fair Dealing, Negligence, and Unjust Enrichment (the "Complaint"). (Dkt. No. 1.) Defendants filed a timely Motion to Dismiss the Complaint. (Dkt. Nos. 7–8.) Plaintiffs filed their response (Dkt. Nos. 11–18) and Defendants filed a reply. (Dkt. No. 21.) For the reasons discussed below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

### I. BACKGROUND [1]

This case arises out of Plaintiffs' investments in Ariel Fund Limited ("Ariel"), a Cayman Islands hedge fund. GCC is a Delaware corporation that serves as Ariel's investment advisor. Merkin is the sole shareholder and sole director of GCC.

1. The facts below are taken from the Complaint, which the Court accepts as true for the purpose of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008) (*citing GICC Capital Corp. v. Technology Fin. Group, Inc.,* 67 F.3d 463, 465 (2d Cir.1995)). The Court also considers documents incorporated into the SCAC by reference and relied upon in drafting the pleadings. *See International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (citation omitted). Except where specifically quoted, no further reference to these documents will be made.

## A. PLAINTIFFS' INVESTMENTS IN ARIEL

In 2001, SSWF invested $1 million in shares of Ariel. In 2006, IISF invested $750,000 in shares of Ariel. Over the ensuing years, Defendants invested an increasing percentage of Plaintiffs' investments in Ariel in the Ponzi scheme operated by Bernard Madoff ("Madoff") under the auspices of Bernard L. Madoff Investment Securities, Inc. ("BMIS"). On December 10, 2008, Madoff admitted to running the largest Ponzi scheme in history and was sentenced to 150 years in prison in June 2009 following his guilty plea. See United States v. Madoff, No. 09 Cr. 213, 2009 WL 8681361 (S.D.N.Y. June 29, 2009). At the time that the Madoff fraud was revealed, Defendants had entrusted to Madoff at least twenty-five percent of the investment capital of the Ariel Fund.

## B. ALLEGED MISREPRESENTATIONS AND OMISSIONS

The Complaint alleges that Defendants made various materially false and misleading statements and/or omissions relating to Plaintiffs' investments in Ariel. Specifically, Plaintiffs claim that Defendants improperly misrepresented and/or failed to disclose Merkin's role in managing Ariel, Ariel's investments in Madoff, and the true nature of Ariel's investment strategy. Plaintiffs point to the Offering Memoranda, Subscription Agreements, and related documents (collectively, the "Governing Documents") distributed by Defendants, in addition to quarterly performance letters ("Quarterly Letters") and various other representations or statements made by Defendants to Plaintiffs.

For example, Plaintiffs allege that the Governing Documents and Quarterly Letters contained various omissions and misrepresentations relating to the nature of Ariel's investments and strategies. According to the 1996 Offering Memorandum, Ariel represented that its investment strategies consisted of risk arbitrage and investments in distressed securities. In the 2006 Offering Memorandum, Ariel represented that its investment strategies consisted of risk arbitrage, investments in distressed securities, and private equity. The 2006 Offering Memorandum further represented that Morgan Stanley was Ariel's sole broker and that Morgan Stanley cleared all transactions for Ariel placed by other brokers. In the Quarterly Letters, Defendants also listed the various asset classes in which Ariel was invested.

According to Plaintiffs, the Governing Documents and Quarterly Letters were false and/or misleading because, while they purported to set forth the nature and strategies of Ariel's investments, they never disclosed either that Ariel was invested in Madoff or that a portion of the assets were being invested pursuant to the "split strike conversion" strategy employed by Madoff. Plaintiffs claim that, regardless of whether the Governing Documents permitted Defendants to delegate funds to third-party managers such as Madoff, Defendants' alleged failure to disclose Ariel's investments with Madoff, in addition to various affirmative misrepresentations— such as the fact that Morgan Stanley cleared all transactions, which Plaintiffs assert was a conscious misrepresentation because Madoff infamously self-cleared all transactions—violated the contractual and common law duties Defendants owed to Plaintiffs.

## C. ARIEL'S FAILURE TO CONDUCT DUE DILIGENCE

Plaintiffs also claim that Defendants' failure to conduct due diligence on Ariel's investments with Madoff was unreasonable and violated the contractual and common law duties Defendants owed to Plaintiffs.

Specifically, Plaintiffs point to Defendants' admitted failure to conduct any formal due diligence on Ariel's investments with Madoff despite a number of alleged "red flags" that Plaintiffs assert should have put Defendants on notice of Madoff's fraud, or at the least, prompted Defendants to disclose the nature of Ariel's investments in Madoff.

## II. *LEGAL STANDARD*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks omitted). The Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner,* 282 F.3d 147, 152 (2d Cir. 2002).

## III. *DISCUSSION*

### A. *STATUTE OF LIMITATIONS*

■ Defendants assert that the relevant statutes of limitations for Plaintiffs' claims began to run at the time of the invest-ments in 2001 and 2006 and therefore are time-barred. Plaintiffs counter that Defendants actively concealed Ariel's investment in Madoff, had continuing obligations and duties to disclose Ariel's investments and conduct due diligence, and therefore the statutes of limitation did not begin to run until Madoff's fraud, and consequently Ariel's investments in Madoff, was uncovered in December 2008. Further, Plaintiffs argue that the applicable statutes of limitation were tolled pursuant to *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) by the filing of a currently pending opt-out federal class action brought on behalf of investors in Ariel and two other funds managed by Merkin—Ascot Partners, L.P. ("Ascot") and Gabriel Partners, L.P. ("Gabriel"). *See In re Merkin,* 817 F.Supp.2d 346, 349 (S.D.N.Y.2011). Defendants counter that the tolling pursuant to *American Pipe* is inapplicable because Plaintiffs allege only state-law claims and that New York courts would not recognize such tolling.

### 1. *Tolling*

■ As Defendants correctly note, a determination as to whether or not the filing of a class action tolls related state law claims is "properly understood to be a question of state law." *Casey v. Merck & Co.,* 653 F.3d 95, 100 (2d Cir.2011). Therefore, "a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action." *Id.* However, "New York courts have, in the interest of avoiding 'court congestion, wasted paperwork and expense,' long embraced the principles of *American Pipe.*" *Cullen v. Margiotta,* 811 F.2d 698, 719–20 (2d Cir. 1987) (*quoting Yollin v. Holland America Cruises, Inc.,* 97 A.D.2d 720, 720, 468

N.Y.S.2d 873, 875 (1st Dep't 1983) ("We . . . hold that the timely commencement of the action by plaintiff herein satisfied the purpose of the contractual limitation period as to all persons who might subsequently participate in the same suit as members of the class. *See American Pipe. . . .*")); *see also Clifton Knolls Sewerage Disposal Co. v. Aulenbach*, 88 A.D.2d 1024, 1025, 451 N.Y.S.2d 907, 908 (3d Dep't 1982) ("[T]he Statute of Limitations on each of plaintiff's claims was tolled during the pendency of [a prior] class action") (internal citations omitted); 1 McLaughlin on Class Actions § 3:15 (9th ed.) ("[T]he majority of state courts to consider the question have adopted the *American Pipe* tolling rule."). Therefore, the filing of the *In re Merkin* class action served to toll the statute of limitations for Plaintiffs' claims.

### 2. *The Weiss Arbitration*

Defendants further argue that tolling based on the pendency of the federal class action is plainly inapplicable because Plaintiffs manifested their intent to opt out of *In re Merkin* when members of the Weiss family commenced an arbitration for their individual claims related to investments in two separate funds managed by Merkin—Ascot and Gabriel (the "Arbitration"). *See Weiss, et al. v. Merkin*, AAA No. 13 148 Y 01803 10. Plaintiffs filed the instant action in January 2013, less than three years after the Arbitration began in July 2010. Therefore, Plaintiffs' claims would not be time-barred even assuming the limitations period began to run at the commencement of arbitration.

Furthermore, as Defendants note in their attempt to bar the instant action on collateral estoppel grounds, the Arbitration did not include the claims at issue in the instant action—the Plaintiffs' investments in Ariel. In fact, the Arbitration did not include investments in Ariel because the Defendants declined to consent to the arbitration of these claims. (Decl. of David E. Bamberger, dated Apr. 28, 2013 ("Bamberger Decl.") ¶ 4, Ex. W.) Therefore, even if the limitations period regarding Plaintiffs' investments in Ascot and Gabriel began to run upon commencement of the Arbitration, it did not affect the current claims relating to investments in Ariel that were not adjudicated in the Arbitration.[2]

For these reasons, Plaintiffs' claims are not barred by the applicable statutes of limitations.

### B. *COMMON LAW FRAUD*

■ "The elements of common law fraud under New York law are: (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." (quotation marks and citations omitted). *Bui v. Industrial Enter. of Am., Inc.*, 594 F.Supp.2d 364, 371 (S.D.N.Y. 2009).

#### 1. *Actionable Misrepresentations and/or Omissions*

■ Defendants' argue that Plaintiffs fail to identify any actionable misrepresentation or omission made by Defendants because the Governing Documents explicitly warn that investment discretion could be delegated to outside money managers and that the Defendants might not have custody of such assets. (Defs.' Mot. at 17–18.) Furthermore, Defendants assert that the Governing Documents did not require the disclosure of the identities of outside money managers, that Defendants disclosed the relevant Madoff investment

---

**2.** For the same reasons, Defendants' attempt to employ the Arbitration to bar the instant action on collateral estoppel grounds also fails.

strategy of purchasing "equity and debt securities and options," and that Plaintiffs' claims that Defendants failed to perform sufficient due diligence on Madoff fail as a matter of law. (*Id.* at 18–19.)

While Defendants are correct that the Governing Documents granted the Defendants the authority to delegate certain decisions to outside money managers, such authority in the abstract does not in and of itself insulate Defendants from possible liability. Assuming the facts as alleged by Plaintiffs, regardless of any obligation to disclose certain money managers and investment strategies embedded in the Governing Documents, Defendants chose of their own volition to provide Quarterly Letters to Plaintiffs explicitly setting forth the "Categories of Investments" in Ariel's portfolio, which they described, in at least one instance, as a "tapestry of six threads . . . established in tandem with our friend Steve Feinberg and the Cerberus Group." (Bamberger Decl., Ex. D at 3.) However, according to Plaintiffs, all of these Quarterly Letters failed to mention the one loose thread that, as of 2006, constituted approximately twenty-five percent of Defendants' artful weaving: Madoff and the "split strike conversion" strategy. (Pls.' Opp'n at 2.)[3]

Whether or not Defendants had a pre-existing duty to disclose the identity of outside money managers and investment strategies, "upon choosing to speak, one must speak truthfully about material issues." *Caiola v. Citibank, N.A., New York,* 295 F.3d 312, 331 (2d Cir.2002). Therefore, once the Defendants chose to disclose in the Quarterly Letters sent to Plaintiffs certain outside money managers, categories of investments, and overall "strategy, [they] had a duty to be both accurate and complete." *Id.* Moreover, the Defendants' decision not to disclose Ariel's investments in Madoff, while affirmatively choosing to disclose this fact to investors in Ascot, contributes to the suspect inference surrounding Defendants' alleged misrepresentations. Finally, Defendants' alleged misrepresentation in the Governing Documents that Morgan Stanley was "Ariel's *sole* prime broker and . . . cleared all transactions for Ariel placed by other brokers," despite allegedly knowing that Madoff cleared and settled his own trades, may in and of itself constitute an actionable misrepresentation at the motion to dismiss stage. (Pls.' Mot. at 3.)

2. *Scienter*

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (quotation marks and citations omitted). Plaintiffs plead a strong inference of scienter where the "complaint sufficiently alleges that the defendants (1) benefited in a concrete and personal way from the purported fraud . . .; (2) engaged in deliberately illegal behavior . . .; (3) knew facts or had access to information suggesting that their public

---

**3.** Defendants also claim that Madoff's strategy falls squarely within the general investment mandate present in the 1996 and 2006 Offering Memoranda claiming that Ariel will purchase " 'equity and debt securities and options' and 'options on stock indices' and engage in 'other arbitrage transactions.' " (Defs.' Mot. at 19.) However, while the Offering Memoranda represent Defendants' generalized representations as to what Ariel *"will* invest and trade," the Quarterly–Letters contained affirmative representations as to the *current* status and constitution of Ariel's portfolio. (Decl. of Kristina A. Moon, dated Mar. 26, 2013 ("Moon Decl."), Ex. B at i (emphasis added).) Therefore, the forward-looking assurances present in the Offering Memoranda do not affect whether the contemporaneous disclosures in the Quarterly Letters were full and *accurate representations of Ariel's* portfolio.

statements were not accurate ...; or (4) failed to check information that they had a duty to monitor...." *South Cherry St., LLC v. Hennessee Grp. LLC,* 573 F.3d 98, 110 (2d Cir.2009) (*quoting Novak,* 216 F.3d at 311).

Defendants claim that the Complaint fails to allege scienter because, among other reasons, (1) Merkin had more than $110 million of his own money invested in Madoff, (2) Merkin's annual management fees are insufficient to establish scienter, (3) and that Defendants' failure to heed purported "red flags" pertaining to Madoff's are insufficient as a matter of law to establish scienter. (Defs.' Mot. at 20.) As support, Defendants point to the holding in *In re Merkin* that "allegations of Madoff-related red flags do not adequately plead scienter." *In re Merkin,* 817 F.Supp.2d at 357.

However, Defendants ignore the full breadth of Plaintiffs' allegations. Plaintiffs do not merely allege that Defendants failed to heed various "red flags," an allegation that standing alone might be insufficient to plead scienter. Instead, Plaintiffs specifically allege that the Defendants knowingly and intentionally failed to "disclose Madoff's role in Ariel and deliberately misrepresented the 'tapestry' of Ariel's investment" in addition to the fact that Morgan Stanley was Ariel's sole custodian. (Pls.' Opp'n at 26.) Plaintiffs' claim that Defendants made these misrepresentations and omissions despite being fully aware

that (1) Ariel's "tapestry" of investments included investments in Madoff and (2) Morgan Stanley was not serving—and indeed could not have served—as a custodian for Ariel's investments with Madoff because, as the Defendants were well aware, Madoff infamously "cleared and settled his own trades, and acted as his own custodian" for all transactions. (*Id.* at 3, 26.) Accordingly, Plaintiffs have adequately pleaded that Defendants "knew facts or had access to information suggesting that their public statements were not accurate" and therefore have satisfied the scienter requirement. *South Cherry,* 573 F.3d at 110.[4]

Accordingly, the Court finds that Plaintiffs have sufficiently alleged a cause of action for common law fraud against the Defendants.

## C. BREACH OF DUTY CLAIMS

 Defendants set forth a number of arguments for dismissal of Plaintiffs' non-fraud breach of duty claims based on the exculpatory provisions in the Governing Documents and adherence to the purported duties of care owed by Defendants to Plaintiffs. Specifically, Defendants argue, among other things, that (1) the Governing Documents expressly bar all claims except for gross negligence, fraud, or intentional conduct; (2) Plaintiffs' claims as investors are derivative of those held by Ariel itself and therefore impermissible; (3) no fiduciary relationship exists between

---

**4.** Plaintiffs also claim that Defendants knew that Madoff did not permit investors to perform due diligence and that Madoff's investment strategy bore no resemblance to Ariel's purported investment strategies. Therefore, Plaintiffs' argue that Defendants' admitted failure to conduct any due diligence of Madoff whatsoever not only violates Defendants' covenant to exercise reasonable care in selecting third-party investment managers, but also establishes that Defendants' alleged omissions and representations in the Offering Memoran-

da and Quarterly Letters were made with full knowledge of their falsity. (Pls.' Opp'n at 4.) These allegations further demonstrate that Plaintiffs' have adequately pled scienter. *See In re Beacon Associates Litig.,* 745 F.Supp.2d 386, 414 (S.D.N.Y.2010) (finding scienter where defendant "promised to 'supervise and direct the investment of the assets of the Fund in accordance with' the Plan's investment policy" even though defendant "knew that it was unable to supervise clients' Madoff investment.")

the parties; (4) the Governing Documents permitted Defendants to delegate investment authority to Madoff without disclosing this fact; and (5) Defendants did not breach their relevant duties of care because of Madoff's reputation as a leading market maker. (Defs.' Reply at 5–10.)

Plaintiffs dispute Defendants' interpretation of the Governing Documents and claim that the relationship between the parties gave rise to fiduciary obligations, and that Defendants breached those duties through statements and omissions inducing Plaintiffs to retain their investments in Ariel. Consequently, Plaintiffs argue that, even assuming the validity of any purportedly exculpatory language in the Governing Documents, the Complaint adequately alleges derelictions of duty sufficiently egregious to constitute gross negligence and bad faith, thereby overcoming any exculpatory language in the Governing Documents. (Pls.' Opp'n at 18–23.)

▮▮▮ The Court is persuaded that Plaintiffs have adequately pleaded claims under New York law for breach of duties owed by Defendants directly to Plaintiffs. *See Anwar v. Fairfield Greenwich Ltd.,* 728 F.Supp.2d 372, 400–1 (S.D.N.Y.2010) ("Under New York law, a shareholder may sue individually when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged.") (internal quotations omitted). Any determination relating to the relevant duty of care owed by Defendants, whether or not Defendants abided by those duties, and other issues raised by Defendants are necessarily linked to Defendants' state of mind and other factual determinations that make resolution of these issues inappropriate at the motion to dismiss phase. *See, e.g., Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.,* 261 F.R.D. 13, 26 (S.D.N.Y. 2009) ("New York courts generally avoid dismissing a claim of breach of fiduciary

duty … because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence."); *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 274 (S.D.N.Y.2006) (holding that whether a fiduciary duty exists "normally depends on the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal"). For these reasons, the Court rejects Defendants' arguments related to Plaintiffs' non-fraud breach of duty claims.

### D. UNJUST ENRICHMENT

▮▮▮ "To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." *Kidz Cloz, Inc. v. Officially for Kids, Inc.,* 320 F.Supp.2d 164, 177 (S.D.N.Y.2004) (internal quotation marks omitted). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987); *accord EBC I, Inc. v. Goldman Sachs & Co.,* 5 N.Y.3d 11, 23, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005).

There is no dispute that the various Governing Documents and the Investment Advisory Agreement are valid contracts governing the relationship between the parties. Accordingly, Plaintiffs' claim for unjust enrichment is DISMISSED.

### E. PUNITIVE DAMAGES

▮▮▮ Under New York law, "punitive damages are unavailable in breach of

contract actions involving only private rights." *Wolf v. Rand,* 258 A.D.2d 401, 404, 685 N.Y.S.2d 708 (1999) (internal citations omitted). "Punitive damages are available in a tort action where the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton." *Gray & Associates, LLC v. Speltz & Weis LLC,* 22 Misc.3d 1124(A), 880 N.Y.S.2d 223, 2009 WL 416138 (N.Y.Sup.Ct.2009) (internal quotation marks omitted).

At the motion to dismiss stage, Plaintiffs have failed to establish a factual record that would substantiate a request for punitive damages. Accordingly, the Court grants without prejudice Defendants' motion to dismiss Plaintiffs' claim for punitive damages.

## III. *ORDER*

Accordingly, it is hereby

**ORDERED** that the motion of defendants J. Ezra Merkin and Gabriel Capital Corporation to dismiss the complaint of plaintiffs Sapirstein–Stone–Weiss Foundation and Irving I. Stone Foundation (Dkt. No. 7) is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

### *DECISION AND ORDER*

By Decision and Order dated June 11, 2013 (the "June 11 Order"), the Court denied in part and granted in part the motion of defendants J. Ezra Merkin ("Merkin") and Gabriel Capital Corporation ("GCC" and, collectively with Merkin, the "Defendants") to dismiss the complaint filed by plaintiffs Sapirstein–Stone–Weiss Foundation ("SSWF") and Irving I. Stone Foundation ("IISF" and, collectively with SSWF, the "Plaintiffs"). Defendants now move for an order pursuant to Local Rule 6.3 ("Rule 6.3") granting reconsideration.

Plaintiffs submitted a memorandum in opposition and Defendants submitted a reply. Defendants' submissions in support of the instant motion reiterate essentially the same arguments made in the underlying matter, points that this Court fully considered and found meritless. For the reasons discussed below, Defendants' motion for reconsideration is DENIED.

## I. *LEGAL STANDARD*

Reconsideration of a previous court order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (internal citations and quotation marks omitted). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Virgin Atl. Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (*quoting* 18 C. Wright, et al., *Federal Practice & Procedure* § 4478 at 790).

To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the Court in its decision on the underlying matter that the movant believes the Court overlooked and that might reasonably be expected to alter the conclusion reached by the court. *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Rule 6.3 is intended to " 'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.' " *Securities and Exch. Comm'n v.*

*Ashbury Capital Partners,* No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (*quoting Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988)). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued or as a substitute for appealing a final judgment. *See Montanile v. National Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y.2002); *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999).

## II. *DISCUSSION*

Defendants urge reconsideration on the basis of the same arguments that were raised in the original motion. The motion for reconsideration cites no controlling law or factual matters the Court overlooked that might reasonably be expected to alter the outcome of the June 11 Order. Indeed, the Court took into account and rejected the various considerations Defendants assert as grounds for this motion.

Defendants assert that the Court erred in failing to dismiss Plaintiffs' fraud and fraud-based breach of fiduciary duty claims. Specifically, Defendants claim that the Court should reconsider its prior decision because (i) courts are explicitly barred from "expanding a party's substantive rights with *American Pipe*" tolling based on the recent Second Circuit decision in *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.,* 721 F.3d 95 (2d Cir.2013); (ii) the Court erroneously applied a three-year statute of limitations to Plaintiffs' fraud-based claims; and (iii) "even if *American Pipe* tolling applies, that tolling extends the statute of limitations only for the four months between commencement of the Ariel class action in March 2010 and Plaintiffs' opting out of that class in July 2010" when members of the Weiss family commenced an arbitration for their individual claims related to investments in two separate funds managed by Merkin—Ascot and Gabriel (the "Arbitration"). (Defs.' Mem. at 4.)

### A. *INDYMAC HAS NO BEARING ON THE COURT'S DECISION*

To begin with, the Second Circuit decision in *IndyMac* has no bearing on the Court's ruling in the instant matter. In *IndyMac,* the Circuit Court held that *American Pipe* tolling could not apply to Section 13 of the Securities Act because the "statute of repose ... creates a *substantive* right" and therefore allowing equitable tolling would impermissibly "enlarge or modify a substantive right and violate the Rules Enabling Act." *IndyMac,* 2013 WL 3214588, at *6 (emphasis in original). However, unlike *IndyMac,* the present case does not involve a statute of repose and therefore there is no bar to equitable tolling pursuant to *American Pipe.* As the Court noted in *IndyMac,* "while statutes of limitations are 'often subject to tolling principles,' a statute of repose 'extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts.'" *IndyMac,* 2013 WL 3214588, at *4 (*quoting Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 597 F.3d 84, 88 n. 4 (2d Cir.2010)). Therefore, there is no bar to applying *American Pipe* tolling in this case.

### B. *THE COURT'S DECISION DID NOT DEPEND ON A THREE-YEAR STATUTE OF LIMITATIONS*

Contrary to the Defendants' assertions, the Court's decision that Plaintiffs' claims were timely was not grounded solely on the fact that Plaintiffs brought these claims "less than three years after the commencement of the Arbitration began in

July 2010." (Defs.' Mem. at 1.) In fact, nowhere in the June 11 Order does the Court purport to apply a three-year statute of limitations. Rather, the Court held that Plaintiffs' various "claims are not barred by the *applicable* statutes of limitations"—regardless of which particular statute of limitations is applicable. *Sapirstein–Stone–Weiss Found. v. Merkin,* 950 F.Supp.2d 621, 626 (S.D.N.Y.2013) (emphasis added). As the Court emphasized, Plaintiffs' claims are timely because "the filing of the *In re Merkin* class action served to toll the statute of limitations for Plaintiffs' claims." *Id.* at 626. Further, the commencement of the July 2010 Arbitration did not stop the tolling of the statute of limitations because the Arbitration did not involve the claims at issue in this case—Plaintiffs' investments in Ariel Fund Limited ("Ariel")—because the "Defendants declined to consent to the arbitration of these claims. Therefore, even if the limitations period regarding Plaintiffs' investments in Ascot and Gabriel began to run upon commencement of the Arbitration, it did not affect the current claims relating to investments in Ariel that were not adjudicated in the Arbitration." *Id.*

## C. *THE ARBITRATION DID NOT STOP TOLLING OF THE STATUTE OF LIMITATIONS FOR THE ARIEL CLAIMS*

Defendants claim that Plaintiffs waived the benefit of tolling the statute of limitations because they "could have filed a complaint in federal court" for the claims relating to Ariel at the same time they commenced the Arbitration for their independent claims relating to other investments with the Defendants. (Pls.' Reply at 5.) However, whether or not Plaintiffs *could have* filed a claim is irrelevant to the question of whether they were *required* to file a claim prior to the resolution of the pending class action in order to preserve their right to sue individually on their

claims stemming from the Ariel investment. Undoubtedly, every plaintiff that forms part of a putative class action could bring suit individually. However, "[t]he *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually." *In re WorldCom Sec. Litig.,* 496 F.3d 245, 256 (2d Cir.2007).

According to Defendants, in order to maintain the timeliness of their claims, Plaintiffs would have been forced either to bring a separate lawsuit relating to their investments in Ariel—notwithstanding that these claims were still part of a putative class action—or to forego a possibly more efficient arbitration of *any* of their independent claims. As Plaintiffs correctly note, had the class action proceeded to certification, subclasses would likely have been established, at the least, for investors in each of the independent funds managed by Defendants. (Pls.' Opp. at 4.) At this point, Plaintiffs could have chosen to explicitly opt-out of the class action for claims relating to investments in the other funds, while remaining a member of the class for the non-arbitrable claims relating to their investments in Ariel. Therefore, allowing Defendants to force Plaintiffs to bring an independent individual claim—despite the pendency of a class action encompassing that claim—by refusing to arbitrate that claim with related disputes would directly violate the underlying rationale of *American Pipe.*

Defendants' proposal, which would force Plaintiffs to forego their right to sue individually on one claim by choosing to arbitrate separate claims against the same parties, not only undermines the explicit rationale of *American Pipe,* but also runs contrary to the broad public policy in favor

of arbitration. *American Pipe* tolling applies to "all those who are asserted to be members of the class for as long as the class action purports to assert their claims." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir.2007) (emphasis added). Because the commencement of the Arbitration relating to separate independent claims against Defendants did not remove Plaintiffs' claims relating to Ariel from the putative class action, Plaintiffs' claims at issue in the instant action are timely.

### D. *PLAINTIFFS' CLAIMS WERE CLEARLY TIMELY*

In the June 11 Order, the Court further held that "Plaintiffs' claims would not be time-barred even assuming the limitations period began to run at the commencement of arbitration." *Sapirstein–Stone–Weiss Found.*, 950 F.Supp.2d at 626. The Court's holding was predicated on the fact that Plaintiffs do not merely allege singular instances of fraud rooted in the July 2001 and April 2006 offering memoranda. Instead, Plaintiffs claim that Defendants actively concealed through continuous and repeated misrepresentations regarding, among other things, Ariel's investment strategy and composition in Quarterly Letters that Defendants sent to Plaintiffs through October 20, 2008. (See Pls.' Opp. at 12.) Defendants' last alleged fraudulent misrepresentation occurred on October 20, 2008 when Defendants issued the final Quarterly Letter and the alleged fraudulent scheme was not uncovered until Madoff's arrest in December 2008. Therefore, Plaintiffs' fraud-based claims are properly predicated on "alleged injuries based upon plaintiffs' decisions to retain their investments in reliance upon the alleged fraud" and misrepresentations. *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F.Supp.2d 385, 407 (S.D.N.Y.2005). Accordingly, even absent any tolling whatsoever, Plaintiffs' fraud-based claims were clearly timely as they were brought within six years of Defendants' last alleged fraudulent misrepresentation.

Because Defendants have failed to identify any controlling law or factual matters put to the Court on the underlying motion that the Court demonstrably did not consider, Defendants' motion for reconsideration is DENIED.

### III. *ORDER*

Accordingly, it is hereby

**ORDERED** that the motion (Dkt. No. 23) of defendants J. Ezra Merkin and Gabriel Capital Corporation for reconsideration of the Court's June 11, 2013 Decision and Order is **DENIED.**

**SO ORDERED.**